FILED
2021 SEP 16 PM 1:17
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **SHIRLEY NIELSEN,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,** | **Case No. 2:20-cv-00666-JCB** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Plaintiff Shirley Nielsen's ("Ms. Nielsen") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case. Based upon the analysis set forth below, the Commissioner's decision is affirmed.

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 36.

[2] ECF No. 14.

[3] 42 U.S.C. §§ 1381-1383f.

**PROCEDURAL BACKGROUND**

Ms. Nielsen alleges disability due to various physical and mental impairments. In January 2018, Plaintiff applied for SSI.[4] Ms. Nielsen's applications were denied initially[5] and upon reconsideration.[6] On December 4, 2019, Ms. Nielsen appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[7] Shortly thereafter, the ALJ issued a written decision denying Ms. Nielsen's claims for SSI.[8] Ms. Nielsen appealed the adverse ruling, and, in August 2020, the Appeals Council denied her appeal,[9] making the ALJ's decision final for purposes of judicial review.[10] On September 23, 2020, Ms. Nielsen filed her complaint in this case seeking review of the Commissioner's final decision.[11]

**STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence,

---

[4] ECF No. 20, Administrative Record ("AR ___") 171-76.

[5] AR 79.

[6] AR 95.

[7] AR 48-65.

[8] AR 32-47.

[9] AR 1-6.

[10] 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.

[11] ECF No. 3.

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.
> . . . .

---

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[17] 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 416.920(a)(4).

> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .[19]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work."[20] "If the claimant is able to perform [her] previous work, [she] is not disabled."[21] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[22]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[23] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[24] If it is determined that the claimant "can make an

---

[19] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(iii).

[20] 20 C.F.R. § 416.920(a)(4)(iv).

[21] *Williams*, 844 F.2d at 751.

[22] *Id*.

[23] *Id*.

[24] *Id*. (quotations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

adjustment to other work," she is not disabled.[25] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[26]

## ANALYSIS

Ms. Nielsen raises two issues on appeal. First, she contends that the ALJ erred by concluding that Ms. Nielsen's cashier job in 2004 through 2005 was "past relevant work" under the SSI regulations. Second, Ms. Nielsen contends that the ALJ inappropriately gave short shrift to the medical opinion of Dr. Alisa Knowlton ("Dr. Knowlton"), and, had the ALJ given Dr. Knowlton's appropriate weight, then the ALJ would have concluded that Ms. Nielsen could not have performed her past relevant work and, therefore, would be disabled. As shown below, neither argument shows that the ALJ's decision is unsupported by substantial evidence.

I.    **THE ALJ APPROPRIATELY DETERMINED THAT MS. NIELSEN'S PAST CASHIER JOB WAS PAST RELEVANT WORK.**

Substantial evidence supports the ALJ's determination that Ms. Nielsen's prior cashier job was past relevant work for purposes of the disability benefits analysis. "Past relevant work is work that [Ms. Nielsen has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it."[27] Thus, the elements of "past relevant work" appear to be: (A) Ms. Nielsen performed work "within the past 15 years"; (B) that was "substantial gainful activity"; and (C) lasted long enough for Ms. Nielsen to learn to do it. As

---

[25] 20 C.F.R. § 416.920(a)(4)(v).

[26] *Id*.

[27] 20 C.F.R. § 416.960(b)(1).

shown below, the administrative record contains sufficient evidence to show that Ms. Nielsen's

past work as a gas station cashier meets each element.

A.  The 15-Year Time Period Does Not Apply to Ms. Nielsen, but, even if It Did, She
    Still Performed Work Within That Period.

Ms. Nielsen performed work within the period allowed under the Commissioner's

regulations. In the movie *Pirates of the Caribbean*, a victim of a pirate invasion invokes a

provision of the Pirate Code that purports to allow her to confer with the pirate captain. In

response to this request, the captain of that particular invasion says, "The [Pirate] Code is more

of what you call guidelines than rules."[28] Such is the case with the Social Security rule defining

the 15-year period for determining past relevant work. The relevant regulation provides: "We do

not *usually* consider that work you did 15 years or more before the time we are deciding whether

you are disabled applies. . . . The 15-year *guide* is intended to insure that remote work experience

is not currently applied."[29] The plain meaning of the word "usually" indicates that the

Commissioner considers employment that is older than 15 years on occasion.[30] Moreover, the

fact that this 15-year term is a "guide," further suggests that the time-period is not "binding" on

the Commissioner. Additionally, because the regulations seem to limit this 15-year period to

skilled and semi-skilled labor, courts have determined that the 15-year limitation does not apply

---

[28] *Pirates of the Caribbean: The Curse of the Black Pearl* (Walt Disney Pictures 2003).

[29] 20 C.F.R. § 416.965(a) (emphasis added).

[30] *Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 109 (6th Cir. 1989) ("The regulation
states that the Secretary does not 'usually' consider work beyond the 15-year period to be
applicable: giving the conventional meaning to the word 'usually' means that the Secretary
sometimes *does* look to work done before the 15-year period." (emphasis in original)).

to unskilled jobs at all.[31] Therefore, based on the plain language of the rule, the 15-year period is a mere guideline that allows an ALJ to look back further than 15 years for any job where appropriate. But where, as here, the past work is unskilled, then the 15-year guideline does not apply at all.

Given that the 15-year period does not apply to unskilled work at all, the debate in the briefs about the ALJ's temporal limitations on Ms. Nielsen's work history is of minimal utility because there is no dispute in this action that Ms. Nielsen's prior employment as a cashier was "unskilled."[32] Consequently, the ALJ was free to consider Ms. Nielsen's employment in unskilled occupations even if they preceded his decision by more than 15 years.

Nevertheless, even assuming counter-textually that the 15-year period is an ironclad rule instead of a guideline, the ALJ considered a temporally appropriate period of employment. As further proof that the 15-year period is more guideline than rule, the regulation fails to provide a fixed point from which the 15-year period is measured. According to the regulation, the 15-year period is measured from "the time we [i.e., the Social Security Administration ("SSA")] are

---

[31] *Id.* ("We therefore conclude that the 15-year cutoff of § 404.1565(a) is not mandatory, and need not be invoked where the work experience in question was unskilled."); *Bowman v. Heckler*, 706 F.2d 564, 567 (5th Cir. 1983) ("In deciding whether to pretermit such dated work experience, . . . the Secretary is entitled to consider the particular kind of work involved and the extent to which the skills and abilities required have in fact changed over the years."). Although the Commissioner concedes that work not performed within 15 years of the ALJ's decision is "not past relevant work," ECF No. 30 at 8 n.2, the Commissioner fails to provide any authority explaining how this view is supported by either the text of the regulation itself or cases interpreting that oddly indefinite regulation. Therefore, the Commissioner's concession does not appear to be well taken.

[32] AR 57.

7

deciding whether you are disabled."[33] The problem with this rule is that the SSA has made the disability decision at several temporal points in this case alone: (1) initial decision; (2) reconsideration; (3) ALJ determination; and (4) the Appeals Council, among others. Each of these decisions occurs at progressively later dates, which means that the 15-year period could change with each subsequent administrative determination.[34] Despite this textual ambiguity, the parties seem to agree that the date of the ALJ decision is the relevant measuring point of the 15-year period. Because that sounds as good as any other decision point—and because the 15-year period probably does not seem to matter at all in this case—the court will consider the 15-year period to begin in December 2004, which is 15 years before the ALJ's decision in this action.

Here, Ms. Nielsen was employed as a cashier at a gas station from November 2004 to July 2005. Although Ms. Nielsen reported employment as a gas station cashier from November 2003 to July 2004,[35] she corrected this information at the hearing before the ALJ and stated that she actually worked in this capacity from 2004 and 2005.[36] Moreover, her pay records from

---

[33] 20 C.F.R. § 416.965(a).

[34] *Rose v. Sec'y of Health & Human Servs.*, No. 92-3908, 1993 WL 288296, at *5 n.3 (6th Cir. July 29, 1993) (stating that the starting point of the 15-year period is unclear and assuming that it is measured from the date of the alleged disability); *Montgomery v. Astrue*, No. 7:07CV305, 2008 WL 2740443, at *3 n.4 (W.D. Va. July 10, 2008) (expressing uncertainty as to measuring point of 15-year period), *report and recommendation adopted*, No. CIV. A. 7:07CV00305, 2008 WL 3285755 (W.D. Va. Aug. 8, 2008).

[35] AR 205.

[36] AR 62.

official sources demonstrate that she received wages from a gas station in 2004 and 2005.[37] Based on this information, substantial evidence supports the ALJ's finding that Ms. Nielsen worked as a cashier at a gas station within 15 years of the ALJ's decision, which meets the first element of "past relevant work."

B.     Ms. Nielsen's Cashier Job was Substantial Gainful Activity.

Substantial evidence supports the ALJ's determination that Ms. Nielsen's cashier job was "substantial gainful activity," which meets the second element of "past relevant work." Under the Commissioner's regulations, "substantial gainful activity" tautologically means "work activity that is both substantial and gainful."[38] Thus, the analysis below reviews whether Ms. Nielsen's cashier employment was both "substantial" and "gainful."

First, Ms. Nielsen's prior work as a cashier was "substantial." "Substantial work activity" means "work activity that involves doing significant physical or mental activities."[39] The regulations further elaborate that work that "contribute[s] substantially to the operation of a business" tends to establish that the activity is substantial.[40] Taking money at a gas station certainly seems to be an important part of the business, and, therefore, being a cashier is certainly "substantial work activity." The parties do not seem to dispute this conclusion.

---

[37] AR 177 (the court notes that these pages pertaining to her income history are out of order in the Administrative Record and appear at the end instead of in sequential order).

[38] 20 C.F.R. § 416.972.

[39] *Id.* § 416.972(a).

[40] *Id.* § 416.973(a).

Second, Ms. Nielsen's cashier job was "gainful." "Gainful work activity" means "work activity that you do for pay or profit."[41] Thus, the Commissioner's primary concern when evaluating this requirement is "the earnings you derive from the work activity."[42] Even though there are many factors that the Commissioner can consider when determining "earnings,"[43] where, as here, Ms. Nielsen was an employee for a company, the Commissioner has determined a threshold amount through a rule-based formula that an employee must earn each month in order for her employment-derived income to be deemed "substantial."[44] For the years 2004 and 2005, the ALJ found that the monthly minimum to attain "substantial" status was $810 and $830 respectively.[45] No party disputes the accuracy of these monthly earning thresholds for 2004 and 2005 under the Commissioner's regulatory formula, and, therefore, the court will accept them as the minimum for meeting the "substantial gainful activity" requirement.

Although neither party disputes the monthly monetary threshold for establishing "substantial gainful activity," Ms. Nielsen argues that substantial evidence does not support the ALJ's arithmetical calculations of her monthly income. To calculate the monthly average income for a claimant, the Commissioner averages earnings "over the entire period of work requiring

---

[41] *Id.* § 416.972(b).

[42] *Id.* § 416.974(a)(1).

[43] *Id.* §§ 416.974(b); 416.976.

[44] *Id.* § 416.974(b)(2)(ii).

[45] AR 43. These thresholds are based on the Commissioner's calculations provided on the Social Security Administration's website at https://www.ssa.gov/oact/cola/sga.html (last visited Sept. 13, 2021).

evaluation."[46] Where, as here, the threshold for "substantial gainful activity" changes from 2004 to 2005, the regulations require calculating the average monthly income "separately for each period in which a different substantial gainful activity earnings level applies."[47] Thus, the court reviews whether substantial evidence supports the ALJ's conclusion that Ms. Nielsen earned $810 for her work in 2004 and $830 for her work in 2005.

The ALJ stated that Ms. Nielsen earned $9,613.77 as a cashier. The $9,613.77 that the ALJ concluded were her earnings as a cashier is supported by substantial evidence because that is the total for her income in 2004 and 2005 according to official sources that reported her income in the record.[48] The ALJ also stated that Ms. Nielsen's average monthly income for the time she worked as a gas station cashier was $1,068.20.[49] Even though the ALJ provided an average monthly income, his analysis did not specifically state the number of months he concluded that Ms. Nielsen had worked for purposes of determining that monthly average. But that omission is not a problem because a simple algebraic calculation reveals that the ALJ found that Ms. Nielsen's employment as a cashier lasted nine months.[50] Substantial evidence supports this nine-month determination because Ms. Nielsen's Work History Report provides that she

---

[46] 20 C.F.R. § 416.974a(a).

[47] *Id.* § 416.974a(b).

[48] AR 187 (showing that in 2004, Ms. Nielsen made $2,622.77, and in 2005 she made $6,991.00. Totaling these two periods of cahier income equals $ 9,613.77).

[49] AR 43.

[50] $9,613.77/M = $1,068.20$
    $1/M = $1,068.20/$9,613.77$
    $M = $9,613.77/$1,068.20$
    $M = 8.99997192$ (rounding to nearest whole number is 9 months)

worked from November 2003 to July 2004—which is nine months—as a gas station cashier.[51] At the ALJ hearing, Ms. Nielsen stated that she worked at that cashier job from 2004 to 2005 instead of 2003 to 2004 as she had previously stated in her Work History Report.[52] Although she corrected the years of her employment as a cashier, she did not correct the months of her employment. Therefore, the ALJ could reasonably conclude that she worked for the nine-month period from November 2004 to July 2005. Given that the evidence supports the ALJ's determination of Ms. Nielsen's total income for 2004 and 2005 and the number of months she was working as a cashier, the ALJ's monthly average of $1,068.20 is supported by substantial evidence.

Although the ALJ calculated a monthly average for the entire nine-month period in which Ms. Nielsen worked, the ALJ did not determine Ms. Nielsen's average monthly income separately for 2004 and 2005. This error is harmless because Ms. Nielsen's average monthly income for 2004 would be $1,311.39 when using the above-referenced numbers found in the record.[53] This monthly average exceeds the $810 threshold for "substantial gainful activity" in 2004. Similarly, Ms. Nielsen's average monthly income for 2005 using the numbers established in the record is $998.71,[54] which exceeds the $830 threshold for "substantial gainful activity" at

---

[51] AR 205.

[52] AR 62.

[53] ($2,622.77/2 months (Nov.-Dec. 2004)) = $1,311.39 per month. However, even if the court excludes November 2004 because it is a month longer than 15-years from the date of the ALJ's decision she still meets the monthly "substantial gainful activity" for December 2004.

[54] ($6,991/7 months (Jan.-July 2005)) = $998.71 per month

that time. Accordingly, substantial evidence supports the ALJ's determination that Ms. Nielsen was engaged in "substantial gainful activity" as a cashier in 2004 and 2005, which meets the second element of "past relevant work."[55]

C.   Ms. Nielsen was Employed as a Cashier for Sufficient Time to Learn How to Do the Job.

The ALJ appropriately determined that Ms. Nielsen was employed for sufficient time to learn how to perform her cashier job, which meets the final element of "past relevant work." The ALJ found that Ms. Nielsen's former cashier job was of a particular classification (i.e., SVP 2) and, therefore, required only a "short demonstration up to and including one month" to learn.[56] The Vocational Expert testified that Ms. Nielsen's prior cashier job was indeed SVP 2.[57] Consequently, the job could "be learned in thirty days or less."[58] Ms. Nielsen conceded at the hearing that she worked as a gas station cashier for "about a year,"[59] and her Work History Report shows employment as a gas station cashier for a nine-month period.[60] Therefore, the ALJ appropriately determined that Ms. Nielsen worked as a gas station cashier longer than the 30-day period required for her to learn how to do the job. Accordingly, substantial evidence supports the

---

[55] Even if the court excludes all of Ms. Nielsen's 2004 income as being too old, Ms. Nielsen's 2005 income alone meets the "substantial gainful activity" amount.

[56] AR 43.

[57] AR 57.

[58] AR 63.

[59] AR 55.

[60] AR 205.

ALJ's conclusion that Ms. Nielsen's gas station cashier job met all three elements to constitute "past relevant work."

## II.   THE ALJ APPROPRIATELY WEIGHED DR. KNOWLTON'S OPINION, AND THIS COURT REFUSES TO REWEIGH THE EVIDENCE.

As to Dr. Knowlton, Ms. Nielsen essentially asks this court to reweigh the evidence and decide in Ms. Nielsen's favor. This court refuses to do so. Rearguing the weight of the evidence is an unavailing tactic on appeal because it is not this court's role to reweigh the evidence before the ALJ.[61] From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.[62]

Reweighing the evidence is exactly what Ms. Nielsen is attempting to do here because she asks this court to find that Dr. Knowlton's opinions were more persuasive than the opinions of Dr. Joseph Fyans, Dr. Kendrick Morrison, and Dr. Richard Neilson.[63] Ms. Nielsen's reweighing request is exceedingly difficult where, as here, she concedes that Dr. Knowlton's opinions suffered from inconsistencies.[64] The ALJ did more than enough under the Commissioner's regulations to articulate why he found Dr. Knowlton's opinion less persuasive

---

[61] *Madrid*, 447 F.3d at 790.

[62] *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[63] ECF No. 28 at 9-17, 21-24.

[64] ECF No. 28 at 11. Additionally, the Commissioner notes many other inconsistencies in Dr. Knowlton's observations. ECF No. 30 at 14-15.

than other medical opinions. Specifically, the ALJ pointed to clear inconsistencies between Dr.

Knowlton's opinion and her recommendations, her lack of objective testing to determine the

limitations that Ms. Nielsen's fibromyalgia imposed, and the fact that Dr. Knowlton's opinions

were inconsistent with other evidence in the record.[65] The court will not disturb this weighing of

the evidence and, therefore, Ms. Nielsen's argument fails.

## <u>ORDER</u>

The court concludes that all of Ms. Nielsen's arguments fail. Accordingly, IT IS

HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED September 16, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[65] AR 41; *see also* 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2) (providing that supportability and consistency are the most important factors to consider when evaluating medical opinions).